## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

GARY ORLOWSKI, individually,
and ESTATE OF ALEXANDER L. ORLOWSKI,
by Special Administrator Gary Orlowski,

Plaintiffs,

v.                                    Civil Case No.: 13-CV-1318

MILWAUKEE COUNTY, a body corporate,
IRBY ALEXANDER, ANTHONY MANNS,
RONALD K. MALONE and
WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION

Defendants.

## FEDERAL COMPLAINT

**NOW COME** the above-named Plaintiffs, GARY ORLOWSKI, individually, the father of Alexander L. Orlowski, and ESTATE OF ALEXANDER L. ORLOWSKI, by Special Administrator Gary Orlowski, by their attorneys, Samster, Konkel & Safran, S.C., and as and for their causes of action against the above-named Defendants, the Plaintiffs allege and show claims for relief as follows:

## INTRODUCTION

1.      The following is a synopsis of Plaintiffs' cause of action:  This is a civil action under the First, Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42, United States Code, Section 1983, brought to obtain compensatory damages, punitive damages, fees and costs for the serious personal injuries and resulting death of Alexander L. Orlowski on November 22, 2007, due to Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, confining Alexander L. Orlowski under conditions that posed a substantial risk of harm to his health and safety, and then failing to provide medical attention for Alexander L. Orlowski's serious medical need.

## JURISDICTION AND VENUE

### Jurisdiction

2.      This action arises under the First, Eighth and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, Section 1983. Jurisdiction of the Court is conferred by Title 28, United States Code, Sections 1331 and 1343(a)(3) and (4).

### Venue

3.      The Eastern District of Wisconsin is a proper federal venue for this action because the Eastern District is a judicial district in the state in which the constitutional and civil rights violations of Plaintiffs are alleged to have been committed pursuant to Title 28, United States Code, Section 1391(b).

## PARTIES

4.      That Plaintiff, Gary Orlowski, the father of Alexander L. Orlowski, deceased, was and is an adult at all times material hereto and was residing at his permanent address in the County of Milwaukee, State of Wisconsin.

5.      That Plaintiff, Estate of Alexander L. Orlowski, proceeds in this action through its appointed Special Administrator, Gary Orlowski.

6.      That Alexander L. Orlowski, deceased, was born on August 26, 1987, and was 20 years of age on the date of his death, November 22, 2007.

7.      That Defendant, Milwaukee County, was at all times material hereto, a body corporate, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at 901 North 9th Street, City and County of Milwaukee, State of Wisconsin, 53233.

8.      That Defendant, Irby Alexander, at all times material hereto, was an adult resident of the County of Milwaukee and employed by the Defendant, Milwaukee County, as a Correctional Officer at the Milwaukee County House of Correction prior to and on November 22, 2007. That, at all times material hereto, said Defendant was acting under color of law and within the scope of his employment for Defendant, Milwaukee County.

9.      That Defendant, Anthony Manns, at all times material hereto, was an adult resident of the County of Milwaukee and employed by the Defendant, Milwaukee County, as a Sergeant at the Milwaukee County House of Correction prior to and on November 22, 2007. That, at all times material hereto, said Defendant was acting under color of law and within the scope of his employment for Defendant, Milwaukee County.

10.     That Defendant, Ronald K. Malone, at all times material hereto, was an adult resident of the County of Milwaukee and employed by the Defendant, Milwaukee County, as the Superintendent of the Milwaukee County House of Correction prior to and on November 22, 2007. That, although no longer employed by Defendant, Milwaukee County, at all times material

hereto, said Defendant was acting under color of law and within the scope of his employment for Defendant, Milwaukee County.

11.     That, upon information and belief, Defendant, Wisconsin County Mutual Insurance Corporation, is a domestic corporation, whose principal offices and mailing address is 22 East Mifflin Street, City of Madison, County of Dane, State of Wisconsin 53703, and whose registered agent, for the purpose of service of process is David Bisek, c/o Aegis Corporation, 18550 West Capitol Drive, City of Brookfield, County of Waukesha, State of Wisconsin 53045. That, upon information and belief, said Defendant, Wisconsin County Mutual Insurance Corporation, was and is engaged in the business of selling and providing policies of liability insurance and conducts substantial business in the County of Milwaukee, State of Wisconsin. That, upon information and belief, at all times material hereto, there was in full force and effect a policy of liability insurance issued by Defendant, Wisconsin County Mutual Insurance Corporation, to Defendant, Milwaukee County, and that by virtue of the alleged actions and/or inactions of Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, Defendant, Wisconsin County Mutual Insurance Corporation, is a proper party Defendant in this action.

## FACTS

12.     That prior to and on the date of his death on November 22, 2007, Alexander L. Orlowski was part of his original immediate family with his father, Plaintiff, Gary Orlowski.

13.     That, except for brief periods of drug treatment and incarceration, and one month of living in a duplex with a roommate, Alexander L. Orlowski lived at home with his father, Plaintiff, Gary Orlowski, his entire life.

14.     That Alexander L. Orlowski was single, and had no children.

4

15.     That Plaintiff, Gary L. Orlowski, provided for Alexander L. Orlowski's financial needs, including providing a roof over his head, feeding him, clothing him and paying for other necessities.

16.     That Alexander L. Orlowski had only sporadic, short-term employment that did not provide for his financial needs.

17.     That the entire time that Alexander L. Orlowski lived with his father, Plaintiff, Gary Orlowski, Alexander L. Orlowski had and complied with a curfew, even after he was 18-years-old.

18.     That Plaintiff, Gary L. Orlowski, provided emotional support to Alexander L. Orlowski, because he was not emotionally an adult.

19.     That, while living with his father Plaintiff, Gary Orlowski, Alexander L. Orlowski performed many chores around the home, including, but not limited to, cutting grass, shoveling snow, preparing dinner and washing dishes.

20.     That Plaintiff, Gary Orlowski, and Alexander L. Orlowski enjoyed many activities together, including but not limited to, boxing and fishing.

21.     That Alexander L. Orlowski enjoyed many activities and hobbies, including, but not limited to, boxing, playing football and soccer, running track and drawing.

22.     That Alexander L. Orlowski got into boxing at age 15 because his father, Plaintiff, Gary Orlowski, worked as a judge and timekeeper for boxing matches.

23.     That Alexander L. Orlowski's career plans included possibly becoming a drug abuse counselor and a tattoo artist.

24.     That Alexander L. Orlowski had a history of drug abuse.

25.     That Alexander L. Orlowski had a prior near-death overdose on heroin when he was 17, which resulted in intensive care hospitalization for one month.

26.     That Alexander L. Orlowski made several attempts to stop using drugs, including rehabilitation stays at the Matt Talbot Recovery Center, which provides substance abuse services.

27.     That, despite his past problems, Alexander L. Orlowski wanted to quit using drugs and turn his life around.

28.     That Alexander L. Orlowski, at the urging and recommendation of his father, Plaintiff, Gary Orlowski, voluntarily checked into the Matt Talbot Recovery Center in June 2007.

29.     That, upon information and belief, Alexander L. Orlowski did not use drugs from June 2007 until approximately three to four days prior to his death on November 22, 2007.

30.     That Alexander L. Orlowski was incarcerated at the Milwaukee County House of Correction from August 22, 2007 to the date of his death on November 22, 2007.

31.     That, upon information and belief, Alexander L. Orlowski was eager to obtain his General Educational Development ("GED") certificate.

32.     That, while incarcerated from August 22, 2007 to the date of his death on November 22, 2007, Alexander L. Orlowski completed the requirements for his GED certificate.

33.     That Plaintiff, Gary Orlowski, received Alexander L. Orlowski's GED certificate after his death on November 22, 2007.

34.     That, while incarcerated at the Milwaukee County House of Correction, Alexander L. Orlowski spent time drawing and doing envelopes for other inmates.

35.     That, while incarcerated at the Milwaukee County House of Correction, other inmates described Alexander L. Orlowski as "easy-going," "friendly," and "a good kid who wanted to quit the drugs."

36.     That, in 2007, including, but not limited to, the time period prior to and when Alexander L. Orlowski was incarcerated, the Milwaukee House of Correction was "a seriously troubled institution."

37.     That, in the spring of 2007, Milwaukee County House of Correction Assistant Superintendent Joe McCarthy requested technical assistance from the Jails Division of the National Institute of Corrections ("NIC").

38.     That the NIC assigned the technical assistance project for the Milwaukee County House of Correction to Jeffrey A. Schwartz, Ph.D.

39.     That Dr. Schwartz conducted the technical assistance project for the Milwaukee County House of Correction in September 2007.

40.     That Dr. Schwartz issued the "National Institute of Corrections Technical Assistance Project Final Report, Operational Review of the Milwaukee House of Correction," ("Final Report") on January 9, 2008.

41.     That a copy of Dr. Schwartz's Final Report is attached to this Federal Complaint as Exhibit A, and is incorporated as part of this Federal Complaint.

42.     That the Final Report identified several significant problems at the Milwaukee County House of Correction, leading Dr. Schwartz to call it "a seriously troubled institution."

43.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone a negative, counter-productive organizational culture at the Milwaukee County House of Correction.

44.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone an entrenched "good old boy" system at the Milwaukee County House of Correction, which resulted in favoritism, nepotism and cliques among employees.

45.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to train employees of the Milwaukee County House of Correction with respect to recognizing the signs of a drug overdose.

46.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees who displayed "prima donna" behavior and unprofessional attitudes.

47.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees who failed to properly supervise inmates.

48.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone poor security at the Milwaukee County House of Correction.

49.     That, prior to and on November 22, 2007, the security problems at the Milwaukee County House of Correction were widespread.

50.     That, prior to and on November 22, 2007, major security lapses at the Milwaukee County House of Correction were so frequent that employees either did not recognize the security problems or accepted the security problems as "just the way it is."

51.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees who performed poorly, cut corners and shirked their duties.

52.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to maintain a Milwaukee County House of Correction policies and procedures manual that was out-of-date, and that contained many irrelevant and inaccurate provisions.

53.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to have written policies and procedures for many operational aspects of the Milwaukee County House of Correction.

54.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to maintain inconsistent policies at the Milwaukee County House of Correction.

55.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees ignoring the policies and procedures manual.

56.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to maintain a lack of accountability for and to condone low expectations of performance from Milwaukee County House of Correction employees.

57.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees engaging in gambling pools while at work.

58.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to properly supervise Milwaukee County House of Correction employees.

59.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to properly evaluate and discipline Milwaukee County House of Correction employees.

60.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to have an Internal Affairs unit to investigate allegations of misconduct by Milwaukee County House of Correction employees.

61.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to properly train managers and supervisors at the Milwaukee County House of Correction.

62.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to maintain training documents, records and other materials for employees of the Milwaukee County House of Correction.

63.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to use outlines, lesson plans or reading materials for training Milwaukee County House of Correction employees, but instead to permit trainers to "fly by the seat of their pants."

64.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to fail to comply with the State of Wisconsin training requirements for correctional officers at the Milwaukee County House of Correction.

65.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to place correctional officers in the Milwaukee County House of Correction dormitories in a position where they would receive more questions and requests from inmates than could be accommodated.

66.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to train correctional officers in the Milwaukee County House of Correction dormitories to avoid and deflect questions and requests from inmates.

67.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to select poor role models as Field Training Officers.

68.     That, prior to and on November 22, 2007, "direct supervision" was known nationally as a method of working with general population jail inmates that emphasized direct interaction between jail staff and the inmates in correctional institutions.

69.     That, prior to and on November 22, 2007, "direct supervision" was known nationally as the most effective and efficient method for working with general population inmates in correctional institutions.

70.     That, prior to and on November 22, 2007, it was known nationally that a main feature of "direct supervision" was to have the same correctional officers assigned to a certain jail dormitory, so that correctional officers and inmates could get to know each other in correctional institutions.

71.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to follow "direct supervision" at the Milwaukee County House of Correction.

72.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to frequently assign correctional officers to different dormitories, so that the correctional officers and inmates did not get to know each other.

73.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to train Milwaukee County House of Correction employees on "direct supervision" methods.

74.     That, upon information and belief, the failure to Defendant, Milwaukee County, to follow "direction supervision" at the Milwaukee County House of Correction resulted in fights and other negative incidents.

75.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone correctional officers at the Milwaukee County House of Correction who slept at their desks during the night shift, and became upset when awakened by inmates.

76.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone Milwaukee County House of Correction employees who did not work well with inmates by, among other things, being disrespectful and punitive.

77.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to maintain insufficient staff levels at the Milwaukee County House of Correction, which resulted in "forcing," meaning that employees would be forced to work overtime.

78.     That, prior to and on November 22, 2007, as a result of "forcing," employees of the Milwaukee County House of Correction would often be required to work 12 or 16 hour days for several days in row.

79.     That, prior to and on November 22, 2007, upon information and belief, employees of the Milwaukee County House of Corrections who were subjected to "forcing" would become overtired, frustrated and angry, which presented a danger to inmates.

80.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone inmates at the Milwaukee County House of Correction moving around the facility unescorted and unsupervised.

81.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to have protocols and procedures for distributing medication to inmates at the Milwaukee County House of Correction.

82.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to supervise the distribution of medication to inmates at the Milwaukee County House of Correction.

83.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, for the inmates at the Milwaukee House of Correction to be given their medications by a nurse.

84.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, that the inmates at the Milwaukee House of Correction were supposed to take their medications in front of the nurse.

85.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, that the inmates at the Milwaukee House of Correction were

supposed to open their mouths and lift their tongues in front of the nurse so that the nurse could confirm that the inmates had taken their medications.

86.     That, prior to and on November 22, 2007, nurses at the Milwaukee House of Correction frequently failed to confirm that the inmates had taken their medications.

87.     That, prior to and on November 22, 2007, the inmates at the Milwaukee House of Correction would often "cheek" their medications when they received them from the nurse, meaning that the inmates would store the medications in their mouths rather than swallow them.

88.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, that the correctional officers at the Milwaukee House of Correction were supposed to observe the nurses giving the inmates their medications.

89.     That, prior to and on November 22, 2007, the correctional officers at the Milwaukee House of Correction often failed to observe the nurses giving the inmates their medications.

90.     That, prior to and on November 22, 2007, the nurses and correctional officers at the Milwaukee House of Correction failed to ensure that inmates were not giving and/or selling their medications to other inmates.

91.     That, prior to and on November 22, 2007, Defendant, Milwaukee County's, explicit and/or implicit policies with respect to the distribution of medications to inmates was easily manipulated by inmates, which allowed for the buying and selling of medications by inmates.

92.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to search inmates for medications and/or drugs.

93.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, not to conduct random drug screens of inmates at the Milwaukee County House of Correction.

94.     That, upon information and belief, prior to and on November 22, 2007, the buying and selling of medications and drugs was a widespread practice at the Milwaukee County House of Correction.

95.     That, upon information and belief, prior to and on November 22, 2007, the inmates at the Milwaukee County House of Correction could buy medications and drugs from other inmates on "credit."

96.     That, upon information and belief, prior to and on November 22, 2007, the "going rate" for a Methadone pill at the Milwaukee County House of Correction was three bags of chips from the commissary.

97.     That, prior to and on November 22, 2007, it was the explicit and/or implicit policy of Defendant, Milwaukee County, to be aware of and condone the buying and selling of medications and drugs among inmates at the Milwaukee County House of Correction.

98.     That, prior to November 22, 2007, Defendant, Milwaukee County, received numerous inspections, audits and technical assistance reports that identified many of the explicit and/or implicit policies and the significant problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, but took no action to change the policies or resolve the problems.

99.     That it was the leadership of the Milwaukee County House of Correction, including, but not limited to, the policy-makers of Defendant, Milwaukee County, and Defendant, Ronald K. Malone, that was ultimately responsible for poor performance and

dangerous conditions of the Milwaukee County House of Correction prior to and on November 22, 2007.

100.    That the explicit and/or implicit policies of Defendant, Milwaukee County, and problems at the Milwaukee County House of Correction set forth in the preceding paragraphs represent a pattern and practice of which Defendant, Milwaukee County, was aware and condoned.

101.    That the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, directly led to and were the proximate cause of the death of Alexander L. Orlowski on November 22, 2007.

102.    That Samuel M. Fitzpatrick was incarcerated at the Milwaukee County House of Correction from approximately one or two weeks prior to November 22, 2007 and on November 22, 2007.

103.    That, upon information and belief, prior to and on November 22, 2007, Samuel M. Fitzpatrick received 140 milligrams of Methadone per day, in the form of seven 10 milligram pills twice per day, at the Milwaukee County House of Correction.

104.    That, upon information and belief, prior to and on November 22, 2007, Samuel M. Fitzpatrick was not taking the Methadone, but was instead offering to sell the Methadone to other inmates at the Milwaukee County House of Correction.

105.    That, upon information and belief, Samuel M. Fitzpatrick was selling Methadone to Alexander L. Orlowski in the days preceding his death on November 22, 2007.

106. That, upon information and belief, several inmates at the Milwaukee County House of Correction knew that Samuel M. Fitzpatrick was selling Methadone to Alexander L. Orlowski in the days preceding his death on November 22, 2007.

107. That, upon information and belief, despite the facts that: (a) Samuel M. Fitzpatrick was offering to sell Methadone to other inmates; (b) Samuel M. Fitzpatrick was selling Methadone to Alexander L. Orlowski in the days preceding his death on November 22, 2007; and (c) several inmates at the Milwaukee County House of Correction knew that Samuel M. Fitzpatrick was selling Methadone to Alexander L. Orlowski in the days preceding his death on November 22, 2007; Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, took no action to prevent Mr. Fitzpatrick from selling Methadone to Alexander L. Orlowski, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

108. That Samuel R. Pelkey was an inmate at the Milwaukee County House of Correction prior to and on November 22, 2007.

109. That, upon information and belief, Samuel R. Pelkey was selling Methadone and/or Seroquel to Alexander L. Orlowski in the days preceding his death on November 22, 2007.

110. That, upon information and belief, on the night of November 21, 2007, Samuel R. Pelkey sold Methadone and/or Seroquel to Alexander L. Orlowski.

111. That, upon information and belief, several inmates at the Milwaukee County House of Correction knew that Samuel R. Pelkey was selling Methadone and/or Seroquel to Alexander L. Orlowski in the days preceding his death on November 22, 2007.

112.     That, upon information and belief, despite the facts that: (a) Samuel R. Pelkey was selling Methadone to Alexander L. Orlowski in the days preceding his death on November 22, 2007; (b) Samuel R. Pelkey sold Methadone and/or Seroquel to Alexander L. Orlowski on the night of November 21, 2007; and (c) several inmates at the Milwaukee County House of Correction knew that Samuel R. Pelkey was selling Methadone and/or Seroquel to Alexander L. Orlowski in the days preceding his death on November 22, 2007; Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, took no action to prevent Mr. Pelkey from selling Methadone and/or Seroquel to Alexander L. Orlowski, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

113.     That Methadone is a narcotic drug used to treat moderate to severe pain and to prevent withdrawal symptoms in those addicted to opiate drugs such as heroin.

114.     That Methadone can cause life-threatening conditions, including, but not limited to, difficulty breathing, slowed breathing, shallow breathing, irregular heartbeat, extreme drowsiness, faintness, severe dizziness and confusion.

115.     That Methadone can be addictive and/or habit-forming.

116.     That Methadone can cause side effects, including, but not limited to, seizures, itching, hives and rash.

117.     That the symptoms of a Methadone overdose include, but are not limited to, small, pinpoint pupils, breathing difficulties, drowsiness, cool, clammy or blue skin, loss of consciousness, coma and limp muscles.

118.    That, upon information and belief, Alexander L. Orlowski kept an empty toothpaste tube with the bottom end split open in his locker at the Milwaukee County House of Correction for the purpose of storing medications and/or drugs.

119.    That, upon information and belief, several inmates at the Milwaukee County House of Correction knew that Alexander L. Orlowski was taking Methadone in the days preceding his death on November 22, 2007.

120.    That, upon information and belief, despite the fact that several inmates at the Milwaukee County House of Correction knew that Alexander L. Orlowski was taking Methadone in the days preceding his death on November 22, 2007, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, took no action to determine if Alexander L. Orlowski was taking Methadone or to prevent Alexander L. Orlowski from taking Methadone, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

121.    That Alexander L. Orlowski missed several of his shifts as a morning kitchen worker at the Milwaukee County House of Correction in the days preceding his death on November 22, 2007.

122.    That, upon information and belief, several inmates at the Milwaukee County House of Correction noticed that Alexander L. Orlowski's appearance and demeanor changed in the three to four days preceding his death on November 22, 2007, including, but limited to: looking "strung out," "tweaked out," and "high;" having redness in his face and around his eyes and nose; having red, blood shot, squinted, dilated and glassy eyes; appearing pale; having dry skin on his hands; itching and scratching constantly, resulting in scratch marks on his neck and

back; bleeding from his ear from over-scratching; having droopy eye lids; having a short attention span; acting hyper; acting unusual and erratic; being unable to sit still; being short tempered; making threats; picking fights; having a bad attitude; being angry; appearing overly-tired; nodding out and falling asleep; slurring his speech; not drawing; not eating; and not having any energy.

123.    That, upon information and belief, several inmates at the Milwaukee County House of Correction were so concerned about Alexander L. Orlowski's well-being in the days preceding his death on November 22, 2007 that they repeatedly asked him if he was all right and told him to stop using drugs.

124.    That, upon information and belief, despite the fact that Alexander L. Orlowski exhibited obvious signs that he was taking drugs such as Methadone during the three to four days preceding his death on November 22, 2007, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, took no action to determine if Alexander L. Orlowski was taking Methadone or to prevent Alexander L. Orlowski from taking Methadone, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

125.    That, upon information and belief, despite the fact that Alexander L. Orlowski exhibited obvious signs of being impaired and/or intoxicated by drugs such as Methadone during the three to four days preceding his death on November 22, 2007, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, failed to provide medical attention to Alexander L. Orlowski, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

126.     That, upon information and belief, despite the fact that Alexander L. Orlowski exhibited obvious signs of the life-threatening conditions and side effects of using drugs such as Methadone during the three to four days preceding his death on November 22, 2007, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, failed to provide medical attention to Alexander L. Orlowski, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

127.     That in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, upon information and belief, the employee who gave the inmates their medications on the night of November 21, 2007 failed to ensure that the inmates were taking their medications and not "cheeking" them.

128.     That, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, Defendant, Irby Alexander, was training a new correctional officer on November 21, 2007, and, as a result, upon information and belief, he failed to observe the employee give the inmates their medications on the night of November 21, 2007.

129.     That, upon information and belief, several inmates at the Milwaukee County House of Correction observed Alexander L. Orlowski to take some Methadone pills around 9 or 10 P.M. on November 21, 2007.

130.     That, upon information and belief, several inmates at the Milwaukee County House of Correction observed Alexander L. Orlowski to appear highly impaired and/or intoxicated by drugs, and dizzy during the evening of November 21, 2007.

131.     That, upon information and belief, an inmate at the Milwaukee County House of Correction observed Alexander L. Orlowski to be stumbling around and rocking back and forth during the evening of November 21, 2007

132.     That, upon information and belief, an inmate at the Milwaukee County House of Correction observed Alexander L. Orlowski to appear overly tired during the evening of November 21, 2007.

133.     That, upon information and belief, in the late evening of November 21, 2007 or the early morning of November 22, 2007, several inmates at the Milwaukee County House of Correction observed Alexander L. Orlowski in the bathroom, looking dizzy, unstable on his feet, like he might fall over, like he was nodding off, and "out of it."

134.     That, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, during the late evening of November 21, 2007 and the early morning of November 22, 2007, Defendant, Irby Alexander was training a new correctional officer, and as a result, upon information and belief, was busy and not properly supervising Alexander L. Orlowski.

135.     That, upon information and belief, at approximately 3:00 A.M. on November 22, 2007, a Milwaukee County House of Correction correctional officer woke up inmates who were scheduled to work the morning shift in the kitchen.

136.     That, upon information and belief, at 3:00 A.M. on November 22, 2007, several inmates attempted to wake Alexander L. Orlowski for his morning shift as a kitchen worker, but he would not get up.

137.    That, upon information and belief, after being unable to wake up Alexander L. Orlowski, one of the inmates asked a correctional officer, who, upon information and belief, was Defendant, Irby Alexander, to "keep an eye on him."

138.    That, upon information and belief, another inmate at the Milwaukee County House of Correction volunteered to take Alexander L. Orlowski's place as a kitchen worker for the morning shift of November 22, 2007.

139.    That, upon information and belief, some correctional officers at the Milwaukee County House of Correction allowed inmate worker substitutions, and other correctional officers did not.

140.    That, upon information and belief, some correctional officers at the Milwaukee County House of Correction sanctioned inmates for missing a work assignment, and other correctional officers did not.

141.    That, upon information and belief, several inmates at the Milwaukee County House of Correction complained to Defendant, Irby Alexander, and/or other correctional officers that Alexander L. Orlowski was snoring, gagging, choking and having breathing difficulties during late evening of November 21, 2007 and the early morning of November 22, 2007.

142.    That, upon information and belief, in response to the inmates' complaints, Defendant, Irby Alexander, observed Alexander L. Orlowski at 3:45 A.M. on November 22, 2007.

143.    That, upon information and belief, several inmates told Defendant, Irby Alexander, that something was wrong with Alexander L. Orlowski on November 22, 2007.

144.     That, upon information and belief, Defendant, Irby Alexander, tried and failed to wake up Alexander L. Orlowski on November 22, 2007 by banging his flashlight on Alexander L. Orlowski's bunk.

145.     That, upon information and belief, Defendant, Irby Alexander, then shined his flashlight on the face of Alexander L. Orlowski on November 22, 2007.

146.     That, upon information and belief, Defendant, Irby Alexander, then left Alexander L. Orlowski's room on November 22, 2007.

147.     That, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction identified in the preceding paragraphs, Defendant, Irby Alexander, failed to call a nurse to examine Alexander L. Orlowski on November 22, 2007.

148.     That, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs, Defendant, Irby Alexander, failed to do anything to determine the medical condition of Alexander L. Orlowski on November 22, 2007.

149.     That, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County and the problems of the Milwaukee County House of Correction, identified in the preceding paragraphs, Defendant, Irby Alexander, failed to provide medical attention to Alexander L. Orlowski on November 22, 2007.

150.     That, upon information and belief, Defendant, Irby Alexander, claimed to have observed Alexander L. Orlowski snoring heavily at an irregular rate on November 22, 2007.

151.    That, upon information and belief, Defendant, Irby Alexander, claimed to have determined that Alexander L. Orlowski was breathing because his chest was rising and falling on November 22, 2007.

152.    That, upon information and belief, Defendant, Irby Alexander, claimed to have disrupted Alexander L. Orlowski's sleep by shaking his bunk, which resulted in Alexander L. Orlowski changing his sleeping position and a dissipation of his snoring on November 22, 2007.

153.    That Defendant, Irby Alexander, made a log entry at 4:00 A.M. on November 22, 2007 regarding his 3:45 A.M. observations of Alexander Orlowski which states: "Z2 Orlowski #719775403 appears to have a severe sleep disorder. Inmate appears to be not breathing at times. Inmate makes a lot of noise while trying to breath [sic] and or when he is breathing. Inmate appears to have a lot of difficulties sleeping. Sgt. Manns notified about Z2 14 Orlowski."

154.    That the "Sgt. Manns" identified in Defendant, Irby Alexander's, November 22, 2007 4:00 A.M. log entry is Defendant, Anthony Manns.

155.    That, upon information and belief, despite the fact that Defendant, Anthony Manns, was notified of Alexander L. Orlowski's condition, and that Defendant, Anthony Manns, was notified that Defendant, Irby Alexander, failed to provide medical attention to Alexander L. Orlowski, Defendant, Anthony Manns, also failed to provide medical attention to Alexander L. Orlowski on November 22, 2007.

156.    That, upon information and belief, Defendant, Irby Alexander, claimed to continually monitor Alexander L. Orlowski during the early morning of November 22, 2007, observing the same breathing difficulties as indicated in the 4:00 A.M. log entry.

157. That, upon information and belief, Defendant, Irby Alexander, claimed that his last observation of Alexander L. Orlowski on November 22, 2007 was at approximately 5:25 A.M.

158. That, upon information and belief, despite claiming to make additional observations of Alexander L. Orlowski during the early morning of November 22, 2007, Defendant, Irby Alexander, made no log entries regarding these claimed observations.

159. That, upon information and belief, several inmates at the Milwaukee County House of Correction continued to inform Defendant, Irby Alexander, and/or other correctional officers that Alexander L. Orlowski was breathing irregularly and could not be woken up during the early morning hours of November 22, 2007.

160. That, upon information and belief, Defendant, Irby Alexander, and/or other correctional officers took no action with respect to the inmates reporting the condition of Alexander L. Orlowski during the early morning hours of November 22, 2007, in accordance with the explicit and/or implicit policies of Defendant, Milwaukee County, and the problems at the Milwaukee County House of Correction, identified in the preceding paragraphs.

161. That, upon information and belief, at approximately 6 A.M. on November 22, 2007, several inmates informed Defendant, Irby Alexander, that they thought Alexander L. Orlowski was dead because he did not have a pulse and appeared to have stopped breathing.

162. That, upon information and belief, after being told by several inmates of Alexander L. Orlowski's condition, Defendant, Irby Alexander, then summoned medical attention for Alexander L. Orlowski.

163. That Alexander L. Orlowski died of a methadone overdose on November 22, 2007 at the Milwaukee County House of Correction.

164.    That the explicit and/or implicit policies of Defendant, Milwaukee County, and the numerous problems at the Milwaukee County House of Correction, set forth in the preceding paragraphs, were the moving force behind the unsafe conditions of confinement and the failure to provide medical attention that led to death of Alexander L. Orlowski on November 22, 2007.

165.    That there are many other specific examples of the explicit and/or implicit policies of Defendant, Milwaukee County, and the numerous problems at the Milwaukee County House of Correction identified in the preceding paragraphs, as will be set forth below.

166.    That Anthony L. Barnes was incarcerated at the Milwaukee County House of Correction prior to and on November 22, 2007.

167.    That, upon information and belief, following the death of Alexander L. Orlowski, Milwaukee County Sheriff's Department detectives found one-half of an unidentified orange pill wrapped in tissue under the mattress of Anthony L. Barnes.

168.    That, upon information and belief, Anthony L. Barnes admitting to "cheeking" the pill, which was one of his prescribed medications.

169.    That, upon information and belief, an inmate at the Milwaukee County House of Correction escaped either during the night of August 3, 2007 or the early morning of August 4, 2007.

170.    That, upon information and belief, the inmate escaped from a supply closet for janitorial supplies at the Milwaukee County House of Correction.

171.    That, upon information and belief, the inmate escaped by prying a security screen off the window of the supply closet.

172.     That, upon information and belief, the inmate made sufficient noise in prying the security screen so that the noise should have alerted Milwaukee County House of Correction employees.

173.     That, upon information and belief, other inmates at the Milwaukee County House of Correction warned staff regarding the pending escape.

174.     That, upon information and belief, the employees of the Milwaukee County House of Correction ignored the inmates' warnings about the pending escape.

175.     That, upon information and belief, the supply closet was unlocked and unsupervised so that the inmate could escape as he did.

176.     That, upon information and belief, the inmate's escape was not quickly discovered because the inmate fashioned a "dummy" out of bedding and clothing that he placed in his dormitory bed, and employees of the Milwaukee County House of Corrections did not discover the "dummy" because the inmate's bed was not properly checked to confirm that the inmate was in his bed.

177.     That, upon information and belief, the investigation into the escape by the Milwaukee County House of Correction took a long time to complete and resulted in a report so poorly done that it was described as "embarrassing."

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:  42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENTS:
### PRISON/JAIL CONDITIONS OF CONFINEMENT

178.     Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

179.     That, at all relevant times herein, Defendant, Milwaukee County, was a "person" for the purposes of Title 42 of the United States Code, Section 1983. That, at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, were "persons" for purposes of Title 42 of the United States Code, Section 1983, and acted under color of law to deprive Alexander L. Orlowski of his constitutional and civil rights.

180.     That, at all relevant times herein, Alexander L. Orlowski was confined at the Milwaukee County House of Correction under conditions, as described in the preceding paragraphs, that posed a substantial risk of serious harm to his health and safety.

181.     That, at all relevant times herein, as described above in the preceding paragraphs, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, were deliberately indifferent to Alexander L. Orlowski's health and safety.

182.     That the conduct of Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, as described above in the preceding paragraphs, was a direct and proximate cause of the death of Alexander L. Orlowski on November 22, 2007.

183.     That the conduct of Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, was also unlawful, extreme, malicious, outrageous and/or intentional.

184.     That at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, also acted with an evil motive or intent, acted maliciously, and/or with reckless disregard, and/or with deliberate indifference, and/or with a reckless or callous indifference towards Alexander L. Orlowski, or in an intentional disregard of his constitutional and civil rights, such as to subject the Defendants to punitive damages.

SECOND CLAIM FOR RELIEF:  42 U.S.C. § 1983
EIGHTH AND FOURTEENTH AMENDMENTS:
FAILURE TO PROVIDE MEDICAL ATTENTION

185.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

186.    That, at all relevant times herein, Defendant, Milwaukee County, was a "person" for the purposes of Title 42 of the United States Code, Section 1983. That, at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, were "persons" for purposes of Title 42 of the United States Code, Section 1983, and acted under color of law to deprive Alexander L. Orlowski of his constitutional and civil rights.

187.    That, at all relevant times herein, Alexander L. Orlowski had a serious medical need, as described in the preceding paragraphs.

188.    That, at all relevant times herein, Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, were deliberately indifferent to Alexander L. Orlowski's serious medical need, as described in the preceding paragraphs.

189.    That the conduct of Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, was a direct and proximate cause of the death of Alexander L. Orlowski on November 22, 2007.

190.    That the conduct of Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, was also unlawful, extreme, malicious, outrageous and/or intentional.

191.    That at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, also acted with an evil motive or intent, acted maliciously, and/or with reckless disregard, and/or with deliberate indifference, and/or with a reckless or callous

indifference towards Alexander L. Orlowski, or in an intentional disregard of his constitutional and civil rights, such as to subject the Defendants to punitive damages.

<u>THIRD CLAIM FOR RELIEF: 42 U.S.C. § 1983</u>
<u>FIRST AND FOURTEENTH AMENDMENT:</u>
<u>LOSS OF FAMILIAL RELATIONSHIP, SOCIETY AND COMPANIONSHIP</u>

192.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

193.    That, at all relevant times herein, Defendant, Milwaukee County, was a "person" for the purposes of Title 42 of the United States Code, Section 1983. That, at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, were "persons" for purposes of Title 42 of the United States Code, Section 1983, and acted under color of law to deprive Plaintiff, Gary Orlowski, of his constitutional and civil rights.

194.    That the conduct of Defendants, Milwaukee County, Irby Alexander, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, in causing the death of Alexander L. Orlowski on November 22, 2007, deprived Plaintiff, Gary Orlowski, of the familial relationship, society and companionship of his son.

<u>FOURTH CLAIM FOR RELIEF</u>
<u>LIABILITY OF SUPERVISOR</u>

195.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

196.    That, at all relevant times herein, Defendants, Anthony Manns and Ronald K. Malone, were "persons" for purposes of Title 42 of the United States Code, Section 1983, and acted under color of law to deprive Alexander L. Orlowski and Plaintiff, Gary Orlowski, of their constitutional and civil rights.

197. That, as described in the preceding paragraphs, Defendant, Irby Alexander, failed to provide medical attention to Alexander L. Orlowski.

198. That Defendant, Anthony Manns, knew that Defendant, Irby Alexander, was about to fail to provide medical attention to Alexander L. Orlowski.

199. That Defendant, Ronald K. Malone, knew that correctional officers at the Milwaukee County House of Correction that he supervised had a practice of failing to provide medical attention to inmates in similar situations.

200. That Defendants, Anthony Manns and Ronald K. Malone, approved, assisted, condoned and/or purposely ignored Defendant, Irby Alexander's, failure to provide medical attention to Alexander L. Orlowski.

201. That, as a result, Alexander L. Orlowski died on November 22, 2007 and Plaintiff, Gary Orlowski, lost the familial relationship, society and companionship of his son.

202. That the conduct of Defendants, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, was also unlawful, extreme, malicious, outrageous and/or intentional.

203. That at all relevant times herein, Defendants, Anthony Manns and Ronald K. Malone, also acted with an evil motive or intent, acted maliciously, and/or with reckless disregard, and/or with deliberate indifference, and/or with a reckless or callous indifference towards Alexander L. Orlowski and Plaintiff, Gary Orlowski, or in an intentional disregard of their constitutional and civil rights, such as to subject the Defendants to punitive damages.

## FIFTH CLAIM FOR RELIEF
### INDEMNIFICATION

204. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

205.    That at all relevant times herein, Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, were employed by Defendant, Milwaukee County, at the Milwaukee County House of Correction, and acted under color of the laws, statutes, regulations, customs, ordinances, policies and usage of Defendant, Milwaukee County, and the Milwaukee County House of Correction, and were acting within the scope of their employment.

206.    That the conduct of Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, described in the preceding paragraphs, was a direct and proximate cause of the injuries and damages to Plaintiffs, as set forth in this Complaint.

207.    That Defendant, Milwaukee County, is liable pursuant to Wisconsin Statute Section 895.46, for payment of any judgment entered against Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, in this action because said Defendants were acting within the scope of their employment when they caused the injuries and damages to Plaintiffs, as set forth in this Complaint.

<u>SIXTH CLAIM FOR RELIEF:  42 U.S.C. § 1983</u>
<u>*MONELL V. DEPT. OF SOC. SERVS. OF CITY OF NEW YORK*, 436 U.S. 658 (1978)</u>
<u>FAILURE TO TRAIN</u>

208.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

209.    That Defendant, Milwaukee County's, training program was not adequate to train employees of the Milwaukee County House of Correction to properly handle recurring situations, as set forth in the preceding paragraphs.

210.    That the policymakers of Defendant, Milwaukee County, knew that more and/or different training was needed to avoid likely unsafe conditions of confinement and failures to

provide medical attention, and/or that this was obvious to the policymakers of Defendant, Milwaukee County.

211. That Defendant, Milwaukee County's, failure to provide adequate training caused the deprivations of Alexander L. Orlowski's and Plaintiff, Gary L. Orlowski's constitutional and civil rights.

SEVENTH CLAIM FOR RELIEF:  42 U.S.C. § 1983
*MONELL V. DEPT. OF SOC. SERVS. OF CITY OF NEW YORK*, 436 U.S. 658 (1978)
FAILURE TO DISCIPLINE

212. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

213. That Defendant, Milwaukee County's, disciplinary policies were not adequate to discipline employees of the Milwaukee County House of Correction with respect to recurring instances of employee misconduct, as set forth in the preceding paragraphs.

214. That the policymakers of Defendant, Milwaukee County, knew that more and/or different disciplinary policies were needed to avoid likely unsafe conditions of confinement and failures to provide medical attention, or that this was obvious to the policymakers of Defendant, Milwaukee County.

215. That Defendant, Milwaukee County's, failure to provide adequate discipline caused the deprivations of Alexander L. Orlowski's and Plaintiff, Gary L. Orlowski's constitutional and civil rights.

EIGHTH CLAIM FOR RELIEF:  42 U.S.C. § 1983
*MONELL V. DEPT. OF SOC. SERVS. OF CITY OF NEW YORK*, 436 U.S. 658 (1978)
CUSTOM OF CONDONING UNSAFE CONDITIONS OF CONFINEMENT AND THE
FAILURE TO PROVIDE MEDICAL ATTENTION

216. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

217.    That, upon information and belief, prior to an on November 22, 2007, the acts of Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, including, but not limited to, the failure to provide safe conditions of confinement and the failure to provide medical attention to Alexander L. Orlowski, were done in accordance with Defendant, Milwaukee County's, customs of: (a) condoning unsafe conditions of confinement at the Milwaukee County House of Correction and (b) condoning the failure to provide medical attention to inmates at the Milwaukee County House of Correction. That, upon information and belief, prior to and on November 22, 2007, these customs were so persistent and widespread, as described in the preceding paragraphs, that they were Defendant, Milwaukee County's, official policies.

218.    That, upon information and belief, prior to and on November 22, 2007, Defendant, Milwaukee County's, customs of: (a) condoning unsafe conditions of confinement at the Milwaukee County House of Correction and (b) condoning the failure to provide medical attention to inmates at the Milwaukee County House of Correction, permitted, encouraged, tolerated or ratified the actions of Defendants, Irby Alexander, Anthony Manns and Ronald K. Malone, as described in the preceding paragraphs, all in malicious or reckless disregard or with deliberate indifference regarding the constitutional and civil rights of Alexander L. Orlowski and Plaintiff, Gary Orlowski.

219.    That, upon information and belief, prior to and on November 22, 2007, the policymakers of Defendant, Milwaukee County, acted with deliberate indifference to the consequences of its customs of: (a) condoning unsafe conditions of confinement at the Milwaukee County House of Correction and (b) condoning the failure to provide medical attention to inmates at the Milwaukee County House of Correction.

220.     That, upon information and belief, the above-mentioned customs, as well as the acts and omissions of the policymakers of Defendant, Milwaukee County, were a direct and proximate cause of the violation of constitutional and civil rights, and the injuries and damages to Alexander L. Orlowski and Plaintiff, Gary Orlowski, as set forth in this Complaint.

## DAMAGES

WHEREFORE, Plaintiff, Gary Orlowski, individually, and Plaintiff, Estate of Alexander L. Orlowski, by Special Administrator, Gary Orlowski, demand judgment against the Defendants as follows:

    a.   In favor of Plaintiff, Gary Orlowski, individually, and against Defendants, Milwaukee County, Irby Alexander, Anthony Manns, Ronald K. Malone and Wisconsin County Mutual Insurance Company, jointly and severally, for compensatory and special damages in an amount sufficient to fairly and reasonably compensate Plaintiff, Gary Orlowski, for the past and future loss of familial relationship, society and companionship of Alexander L. Orlowski; for the extensive funeral and burial expenses; and for other damages provided for by law; and for the violation of the rights of Gary Orlowski, as set forth in the preceding paragraphs, in an amount to be determined at a trial of this matter;

    b.   In favor of Plaintiff, Estate of Alexander L. Orlowski, by Special Administrator Gary Orlowski, and against Defendants, Milwaukee County, Irby Alexander, Anthony Manns, Ronald K. Malone and Wisconsin County Mutual Insurance Company, jointly and severally, for compensatory and special damages in an amount sufficient to fairly and reasonably compensate Plaintiff, Estate of Alexander L. Orlowski, for hedonic damages; for conscious pain, suffering and

death; for the extensive funeral and burial expenses; for other damages provided for by law; and for the violation of the rights of Alexander L. Orlowski, as set forth in the preceding paragraphs, in an amount to be determined at a trial of this matter;

c.  In favor of Plaintiff, Gary Orlowski, individually, and against Defendants, Milwaukee County, Irby Alexander, Anthony Manns, Ronald K. Malone and Wisconsin County Mutual Insurance Company, jointly and severally, for punitive damages for the injuries, damages and violation of the rights of Gary Orlowski, as set forth in the preceding paragraphs, in an amount to be determined at a trial of this matter;

d.  In favor of Plaintiff, Estate of Alexander L. Orlowski, by Special Administrator Gary Orlowski, and against Defendants, Milwaukee County, Irby Alexander, Anthony Manns, Ronald K. Malone and Wisconsin County Mutual Insurance Company, jointly and severally, for punitive damages for the injuries, damages and violation of the rights of Alexander L. Orlowski, as set forth in the preceding paragraphs, in an amount to be determined at a trial of this matter;

e.  In favor of Plaintiff, Gary Orlowski, individually, and Plaintiff, Estate of Alexander L. Orlowski, by Special Administrator Gary Orlowski, and against Defendant, Milwaukee County, for its liability pursuant to Wisconsin Statute Section 895.46, in an amount to be determined at a trial of this matter; and

f.  For all costs, disbursements and reasonable attorneys' fees pursuant to Title 42, United States Code, Section 1983, and for such other relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

*/s/ Jonathan S. Safran*
Jonathan S. Safran
*SBN: 1000881*
Jerome A. Konkel
*SBN: 1000149*
Jeffrey D. Patza
*SBN: 1030512*
SAMSTER, KONKEL, & SAFRAN, S.C.
Attorneys for Plaintiffs, Gary Orlowski,
Individually, and Estate of Alexander L.
Orlowski, by Special Administrator Gary
Orlowski,
1110 North Old World Third Street
Suite 405
Milwaukee, WI 53203
Phone: (414) 224-0400
Fax    : (414) 224-0280
Email:  jsafran@skslawyers.com
Email:  jkonkel@skslawyers.com
Email:  jpatza@skslawyers.com

Date:    November 20, 2013